UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARRYL GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-cv-01678-SEP |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is the Motion for Summary Judgment filed by Defendants Ronald Vaughan and Larry Wentzel, Doc. [111]. For the reasons set forth below, the motion is denied.

**FACTS AND BACKGROUND**

September of 2017 was a tense time in the City of St. Louis. On Friday, September 15th, the 22nd Judicial Circuit Court of the State of Missouri released the verdict in *State v. Stockley*, finding Jason Stockley, a St. Louis police officer, not guilty of the murder of Anthony Smith. Doc. [112] ¶ 6. For the next several weeks, people organized to protest the verdict. *Id*. ¶¶ 7,14. While many of the protestors were peaceful, there were some instances of violence. *See, e.g.*, *id*. ¶¶ 12-13. During the first weekend of the protests, police officers were injured by protests who threw things at them, and some protestors caused property damage in downtown St. Louis. *Id*. The protests and the police response caused controversy. On one occasion, several St. Louis Metropolitan Police Department (SLMPD) officers assaulted an undercover officer who they thought was a protestor. *Id*. ¶ 18. Those events set the scene for this case.

On September 29, 2017, the parties to this case were involved in a protest of the *Stockley* verdict that occurred during and after a St. Louis Cardinals game. *Id*. ¶ 21. Plaintiff, Rev. Darryl Gray, helped organize a protest at the Cardinals game and later walked with fellow protesters in the streets surrounding Busch Stadium. *Id*. ¶¶ 21-31. Defendants, Detectives Ronald Vaughan and Larry Wentzel, were assigned to work the protest and control the traffic. *Id*. ¶¶ 37, 39. The parties largely agree on what happened before the incident that gave rise to this suit.

For most of the night, the protest was peaceful and uneventful. Doc. [133] at 12 ¶¶ 3, 8. Rev. Gray was part of a group that unveiled a banner inside the Cardinals game and then left the game to join marchers outside the stadium. Doc. [112] ¶¶ 21-28. Rev. Gray was lagging behind

the main body of protestors with a small group of about twelve people including three other reverends and a videographer. *Id*. ¶¶ 29-30. As the large group of protestors marched through an intersection near Busch Stadium, traffic from the Cardinals game began to back up. *Id*. ¶ 34. Two female ministers were in the intersection blocking traffic as protestors passed through. Doc. [138] at 8 ¶ 36. After the large group had cleared the intersection, police stopped the remaining protestors, including Rev. Gray's group, to relieve some of the backed-up traffic. Doc. [112] ¶ 34. At the direction of his supervisor, Det. Vaughan began to move the female ministers out of the intersection, touching one of them in the process. *Id*. at 38; Doc. [138] at 15 ¶ 10. Rev. Gray saw that interaction from the other side of the intersection and calmly walked toward Det. Vaughan and the female minister. Doc. [138] at 15 ¶¶ 10-11. Rev. Gray walked to within two feet of Det. Vaughan and respectfully spoke to him about the situation. *Id*. at 9 ¶ 41; 15 ¶ 13. In response, Det. Vaughan told him, "We are tired of this s**t." *Id*. at 15 ¶ 13. The parties disagree about what happened next.[1]

Defendants allege that Det. Vaughan put his hand out as Rev. Gray approached, and Rev. Gray bumped into his outstretched hand. Doc. [112] ¶¶ 42-43. Rev. Gray then pushed Det. Vaughan with two hands, knocking him off balance and causing him to stumble backwards. *Id*. ¶¶ 44-45. As Det. Vaughan fell backwards, he deployed his pepper spray on Rev. Gray. *Id*. ¶ 46. Det. Wentzel, who was standing nearby, saw Rev. Gray push Det. Vaughan. *Id*. ¶ 47. Det. Wentzel intervened by taking Rev. Gray to the ground and arresting him. *Id*. ¶¶ 47-48. From

---

[1] In their response to Plaintiff's Statement of Undisputed Material Facts, Defendants do not controvert that Rev. Gray approached the officers "calmly" and spoke to Detective Vaughan "respectfully." Doc. [138] at 15 ¶¶ 11, 13. The Court acknowledges that the record contains testimony from Detective Vaughan that Rev. Gray approached him in an "aggressive manner" and testimony from Detective Wentzel that Rev. Gray was "animated" and "very mad." *See* Docs. [112-6] at 3, [112-7] at 4. The Court will not second-guess Defendants' decision to admit that Reverend Gray's demeanor was calm and respectful, notwithstanding the existence of testimony to the contrary. As authorized by Federal Rule of Civil Procedure 56(e)(2) and required by Local Rule 4.01(E), the Court deems Plaintiff's uncontroverted characterization of Rev. Gray's demeanor admitted for purposes of the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"); E.D. Mo. L.R. 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."). Even if Defendants had controverted Gray's characterization of his demeanor, though, the Court would be bound to view that dispute in Gray's favor for the purposes of evaluating their motion for summary judgment, provided the facts he proffers are "not so 'blatantly contradicted by the record . . . that no reasonable jury could believe [them].'" *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Defendants' perspective, Det. Vaughan was lawfully removing a protestor who was blocking traffic.  By walking to within two feet of Det. Vaughan while he was interacting with another protestor, Rev. Gray was interfering with the officer's ability to carry out his duties.  Doc. [138] at 15-16 ¶ 14.

Rev. Gray offers a different version of the same interaction.  He alleges that after Det. Vaughan told him, "We are tired of this s**t," Vaughan shoved him in the chest and pepper sprayed him in the eyes.  Doc. [138] at 15-16 ¶¶ 13, 15-16.  Det. Wentzel then picked him up from behind and slammed him to the ground.  *Id*. at 16 ¶ 17.  Rev. Gray denies pushing, touching, or assaulting any officer, or interfering with any officer's official duties.  *Id*. at 15-16 ¶¶ 14, 19.

The parties generally agree about what happened next.  Rev. Gray was prosecuted for unlawfully hindering, obstructing, or interfering with a police officer while in the discharge of his lawful duties.  Doc. [138] at 12-13 ¶ 49; *see also* Doc. [133-4] at 1.  After the Municipal Court of St. Louis City found him guilty of the offense, Rev. Gray applied for and was granted a trial de novo in the 22nd Judicial Circuit Court.  *See* Doc. [133-4] at 1-2.  That court granted Rev. Gray's motion to dismiss because of a defect in the charging document.  *Id*. at 6.  The dismissal was without prejudice, but the City of St. Louis did not refile charges.  *Id*.

On October 2, 2018, Rev. Gray filed this case, alleging violations of his First and Fourth Amendment rights and various state law torts.  *See* Doc. [1].  The case survived two motions to dismiss, Docs. [10], [25], resulting in the Second Amended Complaint.  Doc. [45].  Defendants Vaughan and Wentzel now move for summary judgment, claiming they are shielded by qualified immunity from Rev. Gray's constitutional claims and by official immunity from his state law claims.  Doc. [111].

## Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if it finds, based on the factual record, that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (alteration in original) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)). "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2).

Motions for summary judgment that assert qualified immunity are "somewhat unique in that 'the court should not deny summary judgment any time a material issue of fact remains on the constitutional violation claim.'" *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (cleaned up) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 671 (8th Cir. 2007)). "Because qualified immunity 'is an *immunity from suit* rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (alteration in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Therefore, in a qualified immunity case, "the court must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party so long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe [them].'" *O'Neil*, 496 F.3d at 917 (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## DISCUSSION

**I.  Detectives Vaughan and Wentzel are not entitled to qualified immunity.**

Detectives Vaughan and Wentzel argue that qualified immunity protects them from Rev. Gray's First and Fourth Amendment claims. *See* Doc. [114] at 4-9. An officer "gets qualified immunity unless (1) the facts demonstrate the deprivation of a constitutional or statutory right,

4

and (2) the right was clearly established at the time of the deprivation." *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023) (citing *Aldridge v. City of St. Louis*, 75 F.4th 895, 898 (8th Cir. 2023)).  Thus, the officers can prevail on summary judgment by showing *either* (a) that the evidentiary record is such that no reasonable jury could find that they deprived Rev. Gray of any right, *or* (b) that whatever right a reasonable jury could find that they violated was not clearly established.  Courts "have the 'discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.'" *Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)), *cert. denied*, 143 S. Ct. 2419 (2023).  As explained below, in this case, Rev. Gray's asserted First and Fourth Amendment rights were clearly established, and a genuine dispute about the central fact in the case—i.e., whether Gray or Vaughan was the aggressor—allows for a reasonable jury to find that the officers deprived Rev. Gray of those rights.  Therefore, the officers are not entitled to qualified immunity.

### A.  Count I:  First Amendment Freedom of Speech and Assembly

The parties agree that on the evening of September 29, 2017, Rev. Gray was peacefully protesting in the area around Busch Stadium.  Doc. [138] at 14 ¶ 3.  The Supreme Court of the United States and United States Court of Appeals for the Eighth Circuit have repeatedly held that the First Amendment right to be free from retaliation for speaking out is clearly established.  *See, e.g.*, *Brandy v. City of St. Louis*, 75 F.4th 908, 914 (8th Cir. 2023) ("According to the Supreme Court, 'the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out.'  We have similarly confirmed that this right is clearly established in *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019), and *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010).") (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  In a case from the same night involving a different protestor and a different officer, the Eighth Circuit found:

> Because an officer in Officer Olsten's position would have been on notice that he could not use his pepper spray as a means to retaliate against a citizen for his or her protected expression, we agree with the district court that [the plaintiff's] right to exercise his First Amendment rights without facing retaliation from government officials is clearly established.

*Brandy*, 75 F.4th at 914. Defendants do not argue otherwise in their briefs. *See* Docs. [114], [139]. Instead, they focus on whether Rev. Gray can demonstrate a deprivation of his First Amendment rights.

Rev. Gray argues that Defendants deprived him of his First Amendment right by (Det. Vaughan) pushing and pepper spraying him, and then (Det. Wentzel) body slamming and arresting him in retaliation for exercising his right to peacefully protest and respectfully question police activity. Doc. [132] at 5. "To show retaliation, [he] must demonstrate that (1) [he] engaged in protected expression, (2) [the detectives] took an adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) there was a but-for causal connection between [the detectives'] retaliatory animus and [his] injury." *De Mian*, 86 F.4th at 1182 (citing *Brandy*, 75 F.4th at 914-15). "For a retaliatory arrest claim there is an additional element:  the defendant lacked probable cause or arguable probable cause to arrest." *Nieters v. Holtan*, 83 F.4th 1099, 1110 (8th Cir. 2023) (citing *Just v. City of St. Louis*, 7 F.4th 761, 768 (8th Cir. 2021)), *cert. denied*, 144 S. Ct. 1349 (2024).

The first two elements are straightforward in this case, and Defendants do not contest them. Peacefully protesting and questioning police conduct are protected expression. *See De Mian*, 86 F.4th at 1182 ("Peacefully protesting and reporting are generally protected forms of First Amendment expression."); *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023) (finding "[t]here is no question that the First Amendment protects" a protestor's "criticism of [a police officer's] treatment of women"). And both detectives' undisputed conduct would have "chill[ed] a person of ordinary firmness from continuing" to protest and question police activity. "[A] person of ordinary firmness would be chilled from continuing to . . . protest after being pepper sprayed." *De Mian*, 86 F.4th at 1182 (citing *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014), *abrogated on other grounds by Laney*, 56 F.4th at 1157 n.2); *see also Laney*, 56 F.4th at 1157. And "there can be little doubt that being arrested for exercising the right to free speech would chill a person of ordinary firmness from exercising that right in the future." *Thurairajah*, 925 F.3d at 985 (quoting *Hoyland v. McMenomy*, 869 F.3d 644, 657 (8th Cir. 2017), *abrogated on other grounds by Laney*, 56 F.4th at 1157 n.2).

Defendants focus their challenge on but-for causation, arguing that "the undisputed facts show that neither officer took any action in response to Gray's exercise of his first amendment rights." Doc. [114] at 6. "Detective Vaughan did not use any pepper spray until he was pushed

6

and Detective Wentzel did not use any force until Gray was engaged in a physical altercation with Vaughan." *Id*. In response, Rev. Gray insists that the "evidence is sufficient that a jury could find that the officers were motivated with animus towards Rev. Gray and singled him out for retaliation." Doc. [132] at 5.

In order to prove his claim, Rev. Gray must show that the detectives "would not have taken the adverse action but for harboring 'retaliatory animus' against [him] because of his exercise of his First Amendment rights." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). A temporal connection between the protected activity and retaliatory action is not enough. Rev. Gray "must demonstrate that [he] was 'singled out' due to [his] protected expression[.]" *De Mian*, 86 F.4th at 1182. "The causal connection is generally a jury question . . . [unless] the question is so free from doubt as to justify taking it from the jury." *Id*. (alteration in original) (quoting *Peterson*, 754 F.3d at 603). Viewing the factual record in the light most favorable to Rev. Gray, a reasonable jury could find that Defendants' actions were motivated by retaliatory animus.

The Court begins with the undisputed facts. Rev. Gray was peacefully protesting on the night of September 29, 2017. Doc. [138] at 14 ¶ 3. Rev. Gray saw a group of police offers touching a female clergy member who had been in an intersection blocking traffic. *Id*. at 8 ¶ 36; 9 ¶ 40; 15 ¶ 10. "Rev. Gray calmly walked towards the officer who was holding the female clergy member's arm and intended on asking him to release her." *Id*. at 15 ¶ 11. "Upon respectfully speaking to the officer, the officer responded to Rev. Gray that 'We are tired of this s**t.'" *Id*. at 15 ¶ 13. Whether Det. Vaughan was tired of protesting generally, or tired of Rev. Gray questioning his actions in particular, the undisputed record of the interaction that immediately preceded the physical altercation supports Rev. Gray's claim that Vaughan singled him out for his protected First Amendment activity. And the record relating to the altercation itself is disputed, with both sides relying on eyewitness testimony. *See* Doc. [138] at 10-11 ¶¶ 43-47. Thus, to hold that no reasonable jury could find that the officers' actions were motivated by retaliatory animus, the Court would have to adopt Defendants' version of genuinely disputed facts despite evidence in the record to the contrary.

The Eighth Circuit's rulings in the three other cases that arose from the night of September 29, 2017, are helpful comparators for Det. Vaughan's conduct. In the first case, *Aldridge v. City of St. Louis*, three protestors brough a First Amendment retaliation claim against

7

an officer who "deployed his pepper spray on the crowd," "side to side in a sweeping motion," but "did not arrest any protestors after he deployed his pepper spray." 75 F.4th at 897. The plaintiffs claimed that they were singled out, but the Eighth Circuit disagreed because there was an "'obvious alternative explanation' for the use of force, that [the defendant] was utilizing the pepper spray as a crowd control mechanism rather than retaliating against a particular protestor." *Id*. at 899-900 (quoting *Laney*, 56 F.4th at 1158). The second case, *De Mian v. City of St. Louis*, involved a different protestor in the same crowd, and the Eighth Circuit found that her case was "indistinguishable from *Aldridge*." 86 F.4th at 1182. The plaintiff in the third case, *Brandy v. City of St. Louis*, was in the same crowd as the plaintiffs in *Aldridge* and *De Mian*, but the Eighth Circuit distinguished the cases. 75 F.4th at 916. Brandy was "openly verbally antagonistic to [the officer] by saying: 'If you put that s*** in my face, I'll f*** you up,'" which "elicited a hostile response from [the officer], who turned back to Brandy and responded: 'Come f*** me up then.'" *Id*. That "interaction indicate[d] [the officer] might have singled out Brandy for the adverse action." *Id*.

This case is more like *Brandy* than *Aldridge* or *De Mian*. Rev. Gray was not part of a larger group that was collectively pepper sprayed. He approached Det. Vaughan and spoke directly to him. Like Brandy, Rev. Gray's comments elicited a hostile response from Det. Vaughan: "We are tired of this s**t." Doc. [138] at 15 ¶ 13. At least according to Rev. Gray, that comment was followed by a shove and pepper spray in the eyes. Doc. [138] at 16 ¶ 15-16. On those facts, Det. Vaughan's "motive was not 'so free from doubt as to justify taking [the issue of causation] from the jury.'" *Brandy*, 75 F.4th at 916 (alteration in original) (quoting *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 838 (8th Cir. 2021)).

While it is a closer call, the cause of Det. Wentzel's conduct is also subject to genuine dispute. Wentzel clearly singled out Rev. Gray by taking him to the ground and arresting him, but he argues he had a non-retaliatory motive: responding to a battery on another officer. In support of that argument, Defendants rely heavily on another *Stockley* protest case arising from the events of a different day, *Laney v. City of St. Louis*, 56 F.4th 1153 (8th Cir. 2023). *See* Docs. [114] at 6-7; [139] at 5-7. In *Laney*, SLMPD's Bicycle Response Team (BRT) used bicycles to create a barrier and contain a crowd of protestors. *Id*. at 1155. When protestors tried to cross the barrier, the BRT officers pushed them away with the bikes. *Id*. Laney walked over to criticize the BRT tactics and was pushed back by one of the BRT officers. *Id*. The defendant, Lt.

8

Boyher, seeing what he thought was a fight from almost half a block away, ran over and pepper sprayed Laney. *Id*. The Eighth Circuit rejected Laney's First Amendment claim, finding that "[e]ven viewing the facts in a light most favorable to Laney, causation is missing." *Id*. at 1157. Defendants believe that *Laney* is directly on point because Det. Wentzel, like Lt. Boyher, was responding to assist another officer. *See* Docs. [114] at 6; [139] at 5.

This case is unlike *Laney* in three crucial respects. First, the protests in *Laney* were violent. The BRT was there to protect buses full of police officers after protestors "surrounded the buses and started throwing rocks and water bottles." *Id*. at 1155. The "unruly" nature of the protests created an ongoing threat to other officers that helped justify Boyher's response. *Id*. at 1156. By contrast, the protest on September 29th was peaceful right up until the incident with Rev. Gray. *See* Doc. [138] at 14-15 ¶¶ 3, 8; *see also* Doc. [112-2] (video from September 29, 2017, showing the protest was peaceful until Rev. Gray's arrest). The need for a forceful response to a "perceived danger" was not as acute as it was in *Laney*. 56 F.4th at 1156.

Second, Lt. Boyher was "out of earshot"—"not even in the area"—when Laney criticized the BRT. *Id*. at 1158. Thus, the Eighth Circuit concluded, "Laney's criticism could not have played a role in the decision to use force." *Id*. Det. Wentzel was standing right next to Det. Vaughan when Rev. Gray questioned his conduct toward his fellow protestor. He testified that he saw the whole interaction, though he could not recall what Rev. Gray said to Det. Vaughan. *See* Doc. [112-7] at 4-5. Unlike in *Laney*, the physical circumstances were not such that Rev. Gray's "criticism could not have played a role in [Wentzel's] decision to use force." *Laney*, 56 F.4th at 1158.

Third, unlike Laney, Rev. Gray has provided evidence that would allow a reasonable jury to find that Det. Wentzel's conduct was caused by retaliatory animus. Summary judgment was appropriate in *Laney* because, even on a plaintiff-friendly reading of the facts, there was insufficient evidence of causation. Without improperly assuming the defendant's view of disputed facts, the *Laney* court was able to conclude that Lt. Boyher "could have reasonably believed, based on what he could see, that the situation remained dangerous and that someone needed to drive Laney away from the police barricade." *Id*. at 1156. That is not true here. Det. Wentzel did not simply respond to a "physical altercation between an officer and a protester[,]" Doc. [139] at 5, in an otherwise chaotic context. Det. Wentzel testified that he *saw* Rev. Gray push Det. Vaughan, *see* Doc. [112-7] at 4, while Rev. Gray claims that he did not "push, touch,

9

or assault any of the officers," Doc. [138] at 14 ¶¶ 14, 19.  Thus, depending entirely on assessments of witness credibility, a reasonable jury could conclude either that Rev. Gray pushed Vaughan first, provoking an appropriate response from Wentzel, or that Wentzel took down and arrested Rev. Gray in retaliation for peaceful questioning of Det. Vaughan's conduct.

This case is more like *Dreith v. City of St. Louis,* 55 F.4th 1145 (8th Cir. 2022)—another case involving Lt. Boyher arising from events of the same day as *Laney*—than it is like *Laney* itself.  Lt. Boyher claimed that he pepper sprayed Dreith because "she grabbed an officer's bike or failed to comply with police orders," but Dreith claimed she was sprayed "without warning and without cause." *Id*. at 1149.  The Eighth Circuit upheld the district court's denial of qualified immunity because of that genuine dispute of fact. *Id*. at 1150.  Here too, the Court cannot grant summary judgment based on qualified immunity without improperly resolving a genuine dispute of fact.

Defendants' final argument is that they are entitled to qualified immunity for Rev. Gray's arrest because they had probable cause.  *See* Doc. [114] at 5-7.  An officer has probable cause to make an arrest "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Thurairajah*, 925 F.3d at 983 (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)).  And "[a]rguable probable cause exists if [the] arrest 'was based on an objectively reasonable—even if mistaken—belief that the arrest was based in probable cause.'" *Id*. (quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)).  "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves*, 587 U.S. at 402.

Defendants argue that there was probable cause to arrest Gray for the municipal offense of unlawfully hindering, interfering, or obstructing a police officer.[2]  *See* Doc. [112] ¶ 49.

---

[2] What Rev. Gray was originally arrested for is unclear.  Rev. Gray confirms that he was "charged with unlawful hinder[ing], obstruct[ing], or interfering with a police officer in municipal court," but claims he was initially told a different charge.  Doc. [112-1] at 10.  The Second Amended Complaint states "Reverend Gray's summons initially showed that he was charged with Resisting a Police Officer and Assaulting a Police Officer.  Someone scratched out those charges and changed them to a single charge of interfering with a police officer."  Doc. [45] ¶ 72.  In their motion, Defendants focus only on the interfering charge.  *See* Doc. [112] ¶ 49 ("Gray was subsequently found guilty by a municipal judge of unlawfully hindering, interfering, or obstructing a police officer."); Doc. [114] at 2 ("Gray walked up to Officer Vaughan, with the purpose of interfering with his actions."); *id*. at 7 ("Gray was initially found

Defendants do not identify a specific statute or ordinance in their summary judgment briefing. Instead, they point to a decision of the Municipal Court of St. Louis City finding Rev. Gray guilty of "unlawfully hindering, interfering, or obstructing a police officer." Defendants did not provide the municipal court decision, and the Court was unable to locate it. The best description of the offense charged comes from the 22nd Judicial Circuit Court of the City of Saint Louis's dismissal of the charge after Rev. Gray's application for a trial de novo:

> This matter began on October 3, 2017 when the City of St. Louis issued an Information charging that Defendant did "unlawfully hinder, obstruct or interfere with . . . a City Officer and member of the Metropolitan Police Force of the City of St. Louis, while in the discharge of his official duties."

Doc. [133-4] (omission in original). Based on Defendants' description of the offense in their summary judgment briefing and the circuit court opinion, the Court understands Defendants to be claiming that they had probable cause to arrest Rev. Gray for a violation of § 15.10.010 of the Revised Code of the City of St. Louis, which states:

> Whoever . . . shall hinder, obstruct, resist or otherwise interfere with any City officer in the discharge of his official duties . . . shall be deemed guilty of a misdemeanor.

St. Louis, Mo., Mun. Code § 15.10.010.

Section 15.10.010 is a sweeping statute that has the potential to cover activity protected by the First Amendment. The Supreme Court found that a similar Houston ordinance making it illegal to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty" was unconstitutionally overbroad because it "criminalize[d] a substantial amount of constitutionally protected speech, and accord[ed] the police unconstitutional discretion in enforcement." *City of Houston. v. Hill*, 482 U.S. 451, 466 (1987). Relying on *Hill*, the Eighth Circuit has explained "that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." *Gainor v. Rogers*, 973 F.2d 1379, 1387 (8th Cir. 1992) (collecting cases).

The Court is not aware of any binding interpretations of § 15.10.010, but the Eighth Circuit interpreted a similar St. Louis County ordinance in *Copeland v. Locke*, 613 F.3d 875 (8th Cir. 2010). Under § 701.110 of the St. Louis County Revised Ordinances, "it is unlawful for any

---

guilty of interfering at the municipal level."). The Court therefore analyzes only whether Detective Wentzel had probable cause to believe Defendant was violating the interfering ordinance.

11

person to interfere in any manner with a police officer or other employee of the County in the performance of his official duties or to obstruct him in any manner whatsoever while performing any duty." In *Copeland*, the defendant officer was executing a traffic stop that blocked the driveway of plaintiff's business, preventing customers from leaving. The plaintiff repeatedly asked the officer to move his car. When the officer rejected the request because he was engaged in official police business, the plaintiff "pointed at [the officer], pointed down the road, said 'move the f***ing car,' and pointed at [the officer] again." *Id*. at 878. The officer grabbed his handcuffs and moved to arrest the plaintiff, who, "visibly agitated and not wanting to be arrested, backed up and pulled his hands away." *Id*.

In *Copeland*, the Eighth Circuit reversed the district court's grant of qualified immunity on the plaintiff's Fourth Amendment unlawful arrest claim. The court characterized the "interference" as pointing at, cursing at, and distracting the officer, and held that, "even assuming that . . . such a distraction does constitute interference under the ordinance, such expressive conduct cannot constitute an arrestable offense." *Id*. at 880. Viewed in the light most favorable to the plaintiff, the officer "merely reacted to [the plaintiff's] use of loud, profane language coupled with [his] expressive gestures in directing the [officer] to move his cruiser . . . . No reasonable police officer could believe that he had actual probable cause to arrest a citizen for such protected activity." *Id*. The Eighth Circuit's opinion is consistent with Missouri state court interpretations of § 701.110. Considering a First Amendment overbreadth challenge to § 701.110, the Missouri Court of Appeals concluded that "the presence of **both** the terms 'interfere' and 'obstruct' in the Ordinance provides the requisite guidance to persons of ordinary intelligence that the Ordinance, as a whole, limits physical conduct, and does not limit or preclude a substantial amount of protected First Amendment speech." *Bennett v. St. Louis Cnty.*, 542 S.W.3d 392, 403 (Mo. Ct. App. 2017).

Viewing the record in the light most favorable to Rev. Gray, a reasonable jury could conclude that he was arrested for "merely exercising his First Amendment rights." *Gainor*, 973 F.2d at 1387. On Rev. Gray's account, the facts provide no arguable probable cause to make the arrest. Any mistake would not have been objectively reasonable. Defendants do not dispute that Rev. Gray approached Det. Vaughan calmly and spoke to him respectfully, which is more than can be said for the plaintiff in *Copeland*. Doc. [138] at 15 ¶¶ 11, 13. Defendants do not allege that Rev. Gray disobeyed an order to back up or leave the area, which might have provided

12

probable cause for an obstruction or interference arrest. *See White v. Jackson*, 865 F.3d 1064, 1078 (8th Cir. 2017) ("We have previously concluded that a failure to follow an officer's orders which were grounded in officer safety created at least arguable probable cause to arrest an individual for obstructing a police officer.") (citing *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009-10 (8th Cir. 2017)). The only actions that could have given the officers probable cause for a § 15.10.010 arrest are disputed. Rev. Gray denies that he pushed Det. Vaughan or even bumped into his hand. Doc. [138] at 10-11, 14-15. Defendants' argument "presumes disputed facts in [their] favor, which this court cannot do because [they] moved for summary judgment." Q*uraishi*, 986 F.3d at 836.

Defendants argue that the fact that a municipal court judge found Rev. Gray guilty of interfering is sufficient to establish probable cause for the arrest. *See* Doc. [114] at 7. That argument is unpersuasive. As Rev. Gray points out, his timely application for a trial de novo was granted, and the 22nd Judicial Circuit Court dismissed the charge. *See* Doc. [133-4]. Also, the Court can consider only evidence in the record, and Defendants did not submit anything from the municipal court file. And finally, the municipal trial judge was permitted to do something this Court may not: weigh evidence and decide factual disputes.

In sum, Defendants are not entitled to qualified immunity on Rev. Gray's First Amendment retaliation claim. There is evidence in the record on the basis of which a reasonable jury could find that Defendants' actions—the pepper spray, the take-down, and the arrest—were motivated by retaliatory animus toward Rev. Gray. And the facts that might have provided probable cause for Plaintiff's arrest are likewise contested. Therefore, summary judgment on Count I is denied.

### B. Count IV: Fourth Amendment Excessive Force

Defendants also argue that they are immune from Rev. Gray's Fourth Amendment excessive force claim. Again, the Court must consider two questions: "First, did [they] violate a constitutional right? Second, was the right clearly established?" *Laney*, 56 F.4th at 1156. Rev. Gray alleges that the same conduct that violated his First Amendment right—the pepper spray and take-down—constituted excessive force in violation of the Fourth Amendment. *See* Doc. [45] at 22. While the conduct is the same, "the analyses for First Amendment claims and Fourth Amendment claims are distinct." *Aldridge*, 75 F.4th at 900 n.4. "Whether an officer has used excessive force depends on 'the facts and circumstances confronting [him], without regard to

13

[his] underlying intent or motivation.'" *Laney*, 56 F.4th at 1156 (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). An officer's use of force must be reasonable, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "Relevant factors include (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Kirchmeier*, 28 F.4th at 898 (alteration in original) (quoting *Graham*, 490 U.S. at 396).

Viewing the genuinely disputed facts in the light most favorable to Plaintiff, a reasonable jury could find that the Defendants' uses of force were unreasonable. On Rev. Gray's account of the events, he committed no crime at all. Even on Defendants' account, Rev. Gray's crime was interfering with their duty to move protestors out of the street, which is far from heinous; hence, his prosecution for a misdemeanor municipal ordinance violation. *See* Doc. [133-4]. The only factual allegations suggesting that Rev. Gray posed a safety threat are genuinely disputed. And Defendants have produced no evidence that Rev. Gray actively resisted arrest or attempted to flee. The Eighth Circuit has "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against him." *Kirchmeier*, 28 F.4th at 898.

Both Defendants used more than *de minimis* force. Det. Vaughan pepper sprayed Rev. Gray in the face, and Det. Wentzel grabbed him from behind and took him to the ground. Viewing the disputed facts in the light most favorable to Rev. Gray—i.e., assuming that he did not threaten Det. Vaughan's safety by shoving him—a reasonable jury could find that those actions were excessive, and there is no question that the right not to be treated with such force was clearly established on September 29, 2017. *See, e.g.*, *Tatum v. Robinson*, 858 F.3d 544, 550 (8th Cir. 2017) (use of pepper spray was not reasonable to stop a shoplifter who was angrily arguing with an officer even after the officer gave a warning); *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011) ("At the time of this incident, the law was sufficiently clear to inform a reasonable officer that it was unlawful to throw to the ground and mace a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, who posed little or no threat to anyone's safety, who never received verbal commands to remove herself, and whose only action was to engage in a protective maneuver."); *Brown v. City of Golden Valley*, 574 F.3d 491, 499

14

(8th Cir. 2009) ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.").

Again, Defendants' principal arguments for qualified immunity ask the Court to accept their version of the facts as true: "Detective Vaughan only used pepper spray after he was pushed by Gray." Doc. [114] at 8. "Det. Wentzel . . . saw a physical altercation between an officer and a protester." Doc. [139] at 5. "Plaintiff walked up to within a foot of Vaughan. He then made contact with Vaughan." *Id*. at 6. All of those facts are disputed. Rev. Gray denies pushing Det. Vaughan. He denies making any contact with Det. Vaughan until Det. Vaughan pushed him. *See* Doc. [138] at 10 ¶ 43; 16 ¶ 19. And the argument that Det. Wentzel just "saw a physical altercation" mischaracterizes the record. Det. Wentzel unambiguously claims to have seen Rev. Gray push Det. Vaughan first. *See id*. at 12 ¶ 47. The Court cannot grant summary judgment on the basis of Defendants' contested characterization of material facts.

Defendants also rely on the fact that other *Stockley* protests in the weeks prior had quickly turned violent. "Det. Wentzel, knowing how quickly these protests have turned from peaceful to violent, took quick action and took the protestor to the ground. If there was a mistake, it was reasonable." Doc. [139] at 6. The reasonableness of Defendants' actions undoubtedly depends on their context, but the fact that past protests had turned violent did not give officers *carte blanche*. The facts that arguably made the officers' forceful response to Rev. Gray reasonable are disputed. At a trial, the jury can give any admissible evidence about other protests the weight they think it deserves when evaluating the reasonableness of Defendants' actions. That is not the role of the Court at summary judgment when the central facts of the case are in dispute, and so the motion is denied as to Count IV.

### C. Count VII: Fourth Amendment Unreasonable Seizure

"A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *White*, 865 F.3d 1064, 1074 (8th Cir. 2017) (internal quotation marks omitted) (quoting *Borgman*, 646 F.3d at 522-23). As discussed above, viewing the disputed facts in the light most favorable to Rev. Gray, Defendants did not have even arguable probable cause to arrest him for a violation of St. Louis City Code § 15.10.010. Accordingly, Defendants' motion for summary judgment is denied as to Count VII.

15

## II.     State Law Tort Claims

Defendants claim they are entitled to official immunity on Rev. Gray's state law claims in Counts III, VI, VIII, IX, X, and XI.  "In Missouri 'the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions.'" W*hite*, 865 F.3d at 1074 (quoting *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006)).  "But official immunity does not apply to discretionary acts done in bad faith or with malice."  *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986) (en banc)).  Rev. Gray argues that Defendants acted with bad faith because "assaulting an innocent person who was not committing any crime establishes conscious wrongdoing, bad faith, and malice."  Doc. [132] at 9.

Defendants maintain, and Plaintiff does not contest, that their actions on the evening of September 29, 2017, were discretionary.  *See* Doc. [114] at 10.  Assuming that is true, Defendants have official immunity unless they acted in bad faith.  "[A] bad-faith allegation survives summary judgment if a plaintiff states 'facts from which it could reasonably be inferred that [defendant] acted in bad faith or from an improper or wrongful motive.'"  *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017) (alteration in original) (quoting *Adolf*, 706 S.W.2d at 447-48.).

A reasonable jury could find that Defendants acted with bad faith.  Rev. Gray was exercising well-established First Amendment rights when he approached Det. Vaughan to question his treatment of another protestor.  The parties agree that Rev. Gray approached Det. Vaughan "calmly" and spoke to him "respectfully," and that Det. Vaughan responded, "We are tired of this s**t."  Doc. [138] at 15 ¶¶ 11, 13.  The parties dispute what happened next, but viewed in the light most favorable to Rev. Gray, Det. Vaughan pushed and pepper sprayed him without provocation and Det. Wentzel took him to the ground and arrested him without probable cause.  Those facts, especially Det. Vaughan's hostile response, are more than "[c]onclusory allegations of wrongdoing."  *See Quraishi*, 986 F.3d at 841.  For the same reasons that a reasonable jury could find that Defendants acted with a retaliatory animus, one could find that Defendants' acts were the result of "moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive[.]"  *Blue*, 170 S.W.3d at 479 (quoting *Adolf*, 706 S.W.2d at 447).

16

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the portions of the summary judgment record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Official immunity is the only basis for summary judgment Defendants raised for Plaintiff's state law claims, so the Court will not consider whether summary judgment is appropriate based on the elements of those claims. Also, the only "discretionary acts" Defendants identified in their motion are (1) Sergeant Bartlett's decision to clear the road, (2) Defendants' actions removing people from the road, (3) Defendants' use of force, and (4) Defendants' decision to arrest Plaintiff. *See* Doc. [114] at 9-10. Only the third and fourth actions would subject Defendants to liability, and Plaintiff has provided evidence on which a reasonable jury could find that those acts were done in bad faith. There may be other defects in one or more of Plaintiff's six state law claims, but Defendants failed to raise those arguments or identify the portions of the summary judgment record that demonstrate the absence of a genuine dispute of material fact as to those issues. The arguments Defendants have raised do not entitle them to official immunity from Rev. Gray's state law claims on the record before the Court. Therefore, summary judgment is denied on Counts III, VI, VIII, IX, X, and XI.

## Conclusion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The record before the Court sets up two irreconcilable narratives. Either Defendants pushed, pepper sprayed, took down, and arrested a peaceful protestor, or Rev. Gray shoved a police officer who was exercising his official duties. The Court cannot grant Defendants qualified or official immunity without resolving that factual dispute in Defendants' favor, which would be improper on a motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Ronald Vaughan and Larry Wentzel's Motion for Summary Judgment, Doc. [111], is **DENIED**.

Dated this 30th day of September, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE